Don Springmeyer, Esq.
Nevada State Bar No. 1021
Bradley S. Schrager, Esq.
Nevada State Bar No. 10217
WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120-2234
Telephone: (702) 341-5200/Fax: (702) 341-5300
Email: dspringmeyer@wrslawyers.com
Email: bschrager@wrslawyers.com
*Attorneys for Plaintiff (additional counsel
listed in signature block)*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| TIFFANIE PADAN individually, and on behalf of others similarly situated, | |
| Plaintiffs, | CASE NO.: |
| vs. | |
| WEST BUSINESS SOLUTIONS, LLC, a Delaware limited liability company, | **COLLECTIVE ACTION / CLASS ACTION COMPLAINT** |
| Defendant. | |

Plaintiff, TIFFANIE PADAN, individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective/Class Action Complaint against Defendant, WEST BUSINESS SOLUTIONS, LLC, and state as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, TIFFANIE PADAN (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, WEST BUSINESS SOLUTIONS, LLC (hereinafter referred to as "West Business Solutions" or "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, Nev. Rev. Stat. (hereinafter "N.R.S.") §§ 608.016 and 608.018, and common law.

2.      West Corporation is a Delaware corporation that is headquartered in Omaha, Nebraska. *See* http://www.west.com/about (last visited February 13, 2015). Through its subsidiaries, including West Business Solutions, West Corporation provides communications services (i.e. customer care,

sales, technical support) for its customers including "Agent-based Customer Contacts" comprised of "contact center and home-based agents to help our clients provide high-quality agent support." *Id.*; *see also* http://www.west.com/communication/what/; http://west.com/communication/how/ (last visited February 13, 2015).

3.     West Corporation, and its subsidiaries including West Business Solutions, employee thousands of brick-and-mortar and home based customer service representatives. *See* http://www.west.com/communication/how/contact_centers.asp (last visited February 13, 2015).

4.     West Business Solutions maintains brick-and-mortar contact centers in multiple states across the United States including, but not limited to: Alabama, Florida, Georgia, Illinois, Iowa, Minnesota, Nebraska, Nevada, New Mexico, New York, North Carolina, Ohio, Oklahoma, Texas, Virginia, Washington and Wisconsin. *See* http://www.west.com/about/locations.asp (last visited February 13, 2015).

5.     The majority of Defendant's employees receive and respond to customer calls on behalf of West Corporation's clients. These customer service employees are hourly, non-exempt employees who work in "brick-and-mortar" call center environments or as home-based customer service representatives.

6.      Defendant requires its customer service representatives to work a set schedule. Defendant does not compensate the "brick-and-mortar" customer service representatives (hereinafter "customer service representatives") for all work performed; instead, Defendant only pays those customer service representatives for the time they are on the telephone and available to accept calls. This policy results in customer service representatives not being paid for all time worked and for all of their overtime in violation of the FLSA, N.R.S. §§ 608.016 and 608.018, and common law.

7.     Defendant's customer service representatives use multiple computer programs, software programs, servers and applications, in the course of performing their responsibilities.  These programs, servers and applications, are an integral and important part of their work as they cannot perform their job without them.

8.     Regardless of which brick-and-mortar location they are located at, Defendant's customer service representatives perform the same basic job duties and are required to use the same

2

computer programs, software programs, servers and applications.

9.      Defendant's customer service representative jobs are non-exempt positions that typically pay a few dollars more than the federally mandated minimum wage.

10.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's customer service representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.  One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."  Fact Sheet #64 at p. 2 (a copy of which is attached as **Exhibit A**).

11.     Plaintiff was employed by Defendant as a customer service representative.  In order to perform her job, Plaintiff was required to start-up and log-in to various, computer programs, software programs, servers and applications in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from 5 to 15 minutes per day.

12.     Plaintiff was not actually "clocked in" for her shifts until *after* the computer start-up/log-in process was complete and she logged into the applicable programs, software, servers and applications, meaning that Plaintiff and all other Class members worked at least 5 to 15 minutes each per shift that they were never compensated for. This off-the-clock time Plaintiff spent starting up and logging into each session directly benefitted Defendant and this process was an essential part of Plaintiff's job responsibilities as a customer service representatives.

13.     At the end of each shift, Plaintiff was required to log-out of Defendant's computer programs, software programs, servers and applications. The log-out process took substantial time on a daily basis with said time ranging from 3 to 10 minutes per day.

14.     Defendant required Plaintiff to "clock out" *prior* to logging out of the computer programs, software programs, servers and applications, meaning that Plaintiff and all other Class members worked at least 3 to 10 minutes each per shift that they were never compensated for.  This off-the-clock time Plaintiff spent logging out of each session directly benefitted Defendant and this process was an essential part of Plaintiffs' job responsibilities as home-based customer service representatives.

15.     Between the start-up/log-in process and the log-out process, Defendant failed to pay Plaintiff an amount equal to 8 to 25 minutes of compensable time per shift.

16.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities:  "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."  See Exhibit A, at p. 2.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept."  *Id*.

17.     Defendant knew or could have easily determined how long it took for its customer service representatives to complete the preliminary start-up/log-in process and Defendant could have properly compensated Plaintiff and the Class for the preliminary start-up/log-in work they performed, but did not.  Likewise, Defendant also knew or could have easily determined or tracked how long it took for each customer service representatives to complete the postliminary computer log-out process, and Defendant could have paid Plaintiff and the Class for the postliminary work they performed, but did not.

18.     The named Plaintiff is a former customer service representative who worked for Defendant on an hourly basis in Defendant's Nevada brick-and-mortar contact center.

19.     Plaintiff brings this action on behalf of herself and all other similarly situated hourly customer service representative employees of Defendant to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

**JURISDICTION AND VENUE**

20.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

21.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

22.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the

FLSA applies in this case on an enterprise basis.  Defendant's customer service representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

23.     This Court has jurisdiction over Plaintiff's state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members and Defendant are citizens of different states.

24.     A private party may also bring an action for damages for violations of t N.R.S. §§ 608.016, 608.018. Plaintiff's state claims originate from the same facts that form the basis of her federal claims. The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

25.     This court has personal jurisdiction over Defendant because it does business within the state of Nevada and is registered with the Nevada Department of the Secretary of State.

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant employs service representatives in this district, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

**PARTIES**

27.     Plaintiff is a resident of Reno, Nevada, and was employed by Defendant as an hourly customer service representative from November 2013 to August 2014. Plaintiff signed a consent form to join this lawsuit, which is attached hereto as **Exhibit B**.

28.     Defendant is a Delaware limited liability company that is licensed to do business in Nevada. Defendant employs customer service representatives in Nevada. Defendant's registered agent for service of process in Nevada is CSC Services of Nevada, Inc., 2215-B Renaissance Dr., Las Vegas, Nevada 89119.

**GENERAL ALLEGATIONS**

29.     Plaintiff served as a customer service representative for Defendant at its brick-and-mortar call center location in Nevada from November 2013 to August 2014. Plaintiff typically worked

an eight hour shift (with a 30 minute lunch period) that began at 4:00 p.m. and concluded at 12:30 a.m. During her employment, Plaintiff earned $11.00 per hour.

30.    Throughout her employment with Defendant, Plaintiff regularly worked off-the-clock as part of her job as a customer service representative.

31.    In order to perform her job, Plaintiff was required to start-up and log-in to various, computer programs, software programs, servers and applications, in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from 5 to 15 minutes per day.

32.    Plaintiff was not actually "clocked in" for her shifts until *after* the computer start-up/log-in process was complete and she logged into the applicable programs, software, servers and applications, meaning that Plaintiff and all other Class members worked at least 5 to 15 minutes each per shift that they were never compensated for. This off-the-clock time Plaintiff spent starting up and logging into each session directly benefitted Defendant and this process was an essential part of Plaintiff's job responsibilities as a customer service representatives.

33.    At the end of each shift, Plaintiff was required to log-out of Defendant's computer programs, software programs, servers and applications. The log-out process took substantial time on a daily basis with said time ranging from 3 to 10 minutes per day.

34.    Defendant required Plaintiff to "clock out" *prior* to logging out of the computer programs, software programs, servers and applications, meaning that Plaintiff and all other Class members worked at least 3 to 10 minutes each per shift that they were never compensated for.  This off-the-clock time Plaintiff spent logging out of each session directly benefitted Defendant and this process was an essential part of Plaintiffs' job responsibilities as home-based customer service representatives.

35.    Between the start-up/log-in process and the log-out process, Defendant failed to pay Plaintiff an amount equal to 8 to 25 minutes of compensable time per shift. Thus, Plaintiffs and the putative Class are owed substantial back pay prior to liquidation and interest.

36.    Some examples of specific workweeks where Defendant failed to pay Plaintiff overtime for hours worked in excess of 40 hours (as mandated by the FLSA and Nevada law) include the

following:

    a.   Week of December 16, 2013:

        ➢  Plaintiff was paid for 40.0 hours over five (5) shifts (**Exhibit C**)

        ➢  With preliminary and postliminary time of 8-25 minutes per shift, Plaintiff should have been paid an additional 40 to 125 minutes for the week. Thus, Plaintiff is entitled to overtime wages within a range of 40 to 125 minutes.

    b.   Week of February 10, 2014:

        ➢  Plaintiff was paid for 39.88 hours over five (5) shifts (**Exhibit D**)

        ➢  With preliminary and postliminary time of 8-25 minutes per shift, Plaintiff should have been paid an additional 40 to 125 for the week. Thus, Plaintiff is entitled to overtime wages within a range of 34 to 119 minutes.

    c.   Week of March 3, 2014:

        ➢  Plaintiff was paid for 40.08 hours over five (5) shifts (**Exhibit E**)

        ➢  With preliminary and postliminary time of 8-25 minutes per shift, Plaintiff should have been paid an additional 40 to 125 minutes for the week. Thus, Plaintiff is entitled to overtime wages within a range of 40 to 125 minutes.

37.      Some examples of specific workweeks where Defendant failed to pay Plaintiff overtime for hours worked on a daily basis in excess of an 8 hour workday (as mandated by Nevada law) include the following:

    a.   Week of June 23, 2014:

        ➢  Plaintiff was paid straight-time (no overtime) for 8.52 hours (one shift) (**Exhibit F**)

        ➢  With preliminary and postliminary time of 8-25 minutes per shift, Plaintiff should have been paid an additional 8 to 25 minutes for the week. Thus, Plaintiff is entitled to overtime wages within a range of 8 to 25 minutes (plus .52 hours of daily overtime hours that Defendant also failed to pay her for).

    b.   Week of June 30, 2014:

        ➢  Plaintiff was paid straight-time (no overtime) for 7.98 hours (one

shift) (*Exhibit F*)

➢   With preliminary and postliminary time of 8-25 minutes per shift, Plaintiff should have been paid an additional 8 to 25 minutes for the week. Thus, Plaintiff is entitled to overtime wages within a range of 8 to 25 minutes.

38.     At all relevant times, Defendant was Plaintiff's "employer" and Defendant directed and directly benefited from the work performed by Plaintiff and the putative Class during the preliminary start-up/log-in process and during the postliminary log-out process.

39.     At all relevant times, Defendant controlled Plaintiff's and the putative Class's work schedule, duties, protocols, applications, assignments and employment conditions.

40.     At all relevant times, Defendant was able to track the amount of time that Plaintiff and the putative Class spent in connection with the preliminary start-up/log-in process and during the postliminary log-out process; however, Defendant failed to document, track or pay Plaintiff and the putative Class for the preliminary and postliminary work that they performed in connection with each shift.

41.     At all relevant times, Defendant used its attendance policies against Plaintiff and the putative Class for their preliminary and postliminary time worked and failed to pay for that time.

42.     At all relevant times, Defendant's policies and practices deprived Plaintiff and the putative Class of wages owed for the preliminary and postliminary activities Plaintiff and the putative Class performed.  Because Plaintiff and the putative Class typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived Plaintiff and the putative Class of overtime pay at a rate of 1.5 times their regular rate of pay. Additionally, Defendant's policies and practices deprived Plaintiff and members of the putative Class that worked in Nevada of overtime pay at a rate of 1.5 times their regular rate of pay for all hours worked in excess of 8 hours per day, as required under Nevada law.

43.     Defendant is a leader in the field of call center services and knew or should have known that Plaintiff and other customer service representatives' time spent in connection with the preliminary start-up/log-in process and during the postliminary log-out process is compensable under the FLSA and Nevada law.

## COLLECTIVE ACTION ALLEGATIONS

44.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> **All similarly situated current and former hourly customer service representatives who worked for Defendant at any time during the last three years.**

(hereinafter referred to as the "Class").  Plaintiff reserves the right to amend this definition as necessary.

45.     Excluded from the Class are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

46.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).  The class of employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

47.     The employment relationships between Defendant and every Class member are the same and differs only name, location, and rate of pay. The key issues – the amount of uncompensated preliminary start-up/log-in time and postliminary log-out time owed to each employee – does not vary substantially from Class member to Class member.

48.     The key legal issues are also the same for every Class member, to wit: whether the 5 to 15 minutes of preliminary start-up/log-in time and the 3 to 10 minutes of postliminary log-out time are compensable under the FLSA.

49.     Plaintiff estimates that the Class, including both current and former employees over the relevant period, will include several thousand members. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NEVADA CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own

behalf and on behalf of:

> **All similarly situated current and former hourly customer service representatives who worked in Nevada for Defendant at any time during the last three years.**

(hereinafter referred to as the "Rule 23 Nevada Class").  Plaintiff reserves the right to amend this definition as necessary.

51.     The members of the Rule 23 Nevada Class are so numerous that joinder of all Rule 23 Nevada Class members in this case would be impractical.  Plaintiff reasonably estimates that there are hundreds of Rule 23 Nevada Class members.  Rule 23 Nevada Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

52.     There is a well-defined community of interest among Rule 23 Nevada Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nevada Class.  These common legal and factual questions, include, but are not limited to, the following:

    a.   Whether the preliminary time Rule 23 Nevada Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

    b.   Whether the postliminary time Rule 23 Nevada Class members spend on log-out activities subsequent to "clocking out" for each shift is compensable time;

    c.   Whether Rule 23 Nevada Class members are owed wages (above the federally mandated minimum wage and overtime due under the FLSA) for time spent performing preliminary and postliminary activities, and if so, the appropriate amount thereof; and

    d.   Whether Defendant's non-payment of wages for all compensable time amounts to a breach of contract.

53.     Plaintiff's claims are typical of those of the Rule 23 Nevada Class in that she and all other Rule 23 Nevada Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nevada Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nevada Class members.

54.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nevada Class and she has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nevada Class.

55.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nevada Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.  Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

56.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

57.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

58.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nevada Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nevada Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> **All similarly situated current and former hourly customer service representatives who worked for Defendant at any time during the last three years.**

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to amend this

definition as necessary.

60.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.  Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

61.     There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

      a.   Whether the preliminary time Rule 23 Nationwide Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

      b.   Whether the postliminary time Rule 23 Nationwide Class members spend on log-out activities subsequent to "clocking out" for each shift is compensable time; and

      c.   Whether Defendant's non-payment of wages for all compensable time amounts to a breach of contract.

62.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

63.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23

Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

65.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

66.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

67.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### FIRST CLAIM FOR RELIEF

#### (29 U.S.C. § 216(b) Collective Action)

Violation of the Fair Labor Standards Act,
29 U.S.C. § 201, *Et Seq.* -- Failure to Pay Overtime

68.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

69.     At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

71.     Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

72.     At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

73.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for

commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

74.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

75.     At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to perform 8 to 15 minutes of preliminary start-up/log-in activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

76.     At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to perform no less than 3 to 10 of postliminary logout activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

77.     The preliminary and postliminary off-the-clock work performed by Plaintiff and all similarly situated Class members every session is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

78.     In workweeks where Plaintiff and other Class members worked 40 hours or more, the uncompensated preliminary start-up/log-in time and postliminary log-out time, should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage.  29 U.S.C. § 207.

79.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its customer service representatives to complete the preliminary start-up/log-in process and Defendant could have properly compensated Plaintiff and the Class for the preliminary start-up/log-in work they performed, but did not.  Likewise, Defendant also knew or could have easily determined or tracked how long it took for each customer service representatives to complete the postliminary computer log-out process, and Defendant could have paid Plaintiff and the Class for the postliminary work they performed, but did not.

80.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional

14

equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### SECOND CLAIM FOR RELIEF

#### (Rule 23 Nevada Class Action)

Violations Of N.R.S. §§ 608.016 and 608.018 – Failure to Pay Wages and
Overtime under Nevada Law

81.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

82.     All member of the Rule 23 Nevada Class are entitled to their regular wages and/or overtime pursuant to Nevada's wage and hour laws, N.R.S. §§ 608.016 and 608.018.

83.     Defendant, Plaintiff and the Rule 23 Nevada Class members are "employers" and "employees" for the purposes of Nevada law.

84.     N.R.S. § 608.016 states that an "employer shall pay to the employee wages for each hour the employee works."

85.     N.R.S. § 608.018 states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week or eight (8) hours per day assuming the employee earns less than 1.5 times the Nevada minimum wages.

86.     By failing to pay Plaintiff and members of the Rule 23 Nevada Class for all of the time they worked (including a payment equal to 1.5 times their ordinary wage on that time), including the time they worked in connection with the preliminary start-up/log-in process and in connection with the postliminary log-out process, Defendant violated N.R.S. §§ 608.016 and 608.018.

87.     Defendant's violations of N.R.S. §§ 608.016 and 608.018 were intentional and, as such, the three-year statute of limitation found in N.R.S. § 11.190(3) applies to those claims.

88.     Defendant's actions discussed above were willfully oppressive, fraudulent and malicious, entitling Plaintiff and the Rule 23 Nevada Class to punitive damages.

89.     Defendant violated Nevada law, including N.R.S. §§ 608.016 and 608.018, by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Nevada Class for the time spent on the work activities described in this Complaint. As a result, Plaintiff and the Rule 23 Nevada Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Nevada

Class are entitled to recover unpaid wages owed, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under N.R.S. §§ 608.005 *et seq.*

## THIRD CLAIM FOR RELIEF

**(Rule 23 Nationwide Class Action)**

Breach of Contract

90.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

91.     At all times relevant to this action, Defendant had a contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

92.      Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

93.     Plaintiff and every other Rule 23 Nationwide Class member performed under the contract by doing their jobs and carrying out the preliminary and postliminary activities that Defendant required or accepted.

94.     By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the preliminary start-up/log-in activities performed prior to clocking in for each shift and the postliminary log-out activities performed subsequent to clocking out at the end of each shift, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

95.     Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

96.     Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent doing preliminary, and postliminary activities, which is a fundamental part of an "employer's job."

97.     As a direct and proximate result of Defendant's breaches of the contracts alleged herein,

Plaintiff and every other member of the Rule 23 Nationwide Class have been damaged, in an amount to be determined at trial.

98.     These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Tiffanie Padan, requests the following relief:

a.     Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.     Certifying this action as a class action (for the Rule 23 Nevada Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claim (Count II);

c.     Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count III);

d.     Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.     Designating Plaintiff as the representative of the FLSA collective action Class, the Rule 23 Nevada Class, and the Rule 23 Nationwide Class and undersigned counsel as Class counsel for the same;

f.     Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.     Declaring Defendant's violation of the FLSA was willful;

h.     Declaring Defendant violated N.R.S. §§ 608.016 and 608.018 and that said violations were intentional, willfully oppressive, fraudulent and malicious;

i.     Declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

j.     Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action Class, the Rule 23 Nevada Class, and the Rule 23 Nationwide Class, the full amount of damages and liquidated damages available by law;

k.     Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as

provided by statute;

l.      Awarding pre- and post-judgment interest to Plaintiff on these damages; and

m.     Awarding such other and further relief as this Court deems appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## JURY DEMAND

Plaintiff, TIFFANIE PADAN, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated:  March 4, 2015

**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN & RABKIN, LLP**

By:   */s/ Don Springmeyer, Esq.*

Don Springmeyer, Esq.
Nevada State Bar No. 1021
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
Telephone: (702) 341-5200/Fax: (702) 341-5300
Email: dspringmeyer@wrslawyers.com

Matthew L. Turner  (Pending Admission Pro Hac Vice)
MI Bar No. P48706
Kevin J. Stoops  (Pending Admission Pro Hac Vice)
MI Bar No. P64371
Jesse L. Young (Pending Admission Pro Hac Vice)
MI Bar No. P72614
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: 248-355-0300
mturner@sommerspc.com
kstoops@sommerspc.com
jyoung@sommerspc.com

Timothy J. Becker  (Pending Admission Pro Hac Vice)
MN Bar No. 256663
Jacob R. Rusch (Pending Admission Pro Hac Vice)
MN Bar No. 391892
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Telephone: (612) 436-1800
Facsimile: (612) 436-1801
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

*Attorneys for Plaintiff*