# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

TIFFANIE PADAN, et al.,

    Plaintiffs,

vs.

WEST BUSINESS SOLUTIONS, LLC,

    Defendant.

Case No. 2:15-cv-00394-GMN-CWH

**REPORT AND RECOMMENDATION**

This matter comes before the Court on the Plaintiffs' Unopposed Motion for Approval of Proposed Settlement, Incentive Award, Attorneys' Fees and Litigation Expenses, and Settlement Administration Expenses (ECF No. 137) and the Parties' Joint Status Report Regarding Proposed Settlement Agreement (ECF No. 138).

The Court having fully reviewed the Motion, the supporting Memorandum of Points and Authorities, the supporting Declarations of Kevin Stoops, Esq., Don Springmeyer, Esq., and David H. Grounds, Esq., and the Settlement Agreement (ECF No. 137-1), along with the Parties' Joint Status Report Regarding Proposed Settlement Agreement (ECF No. 138), and in recognition of its duty to make a determination as to the reasonableness of any proposed collective action settlement, **HEREBY MAKES THE FOLLOWING FINDINGS**:

1. The Court has examined and finds good grounds to approve this parties' settlement as a fair, reasonable, and adequate resolution of a bona fide dispute pursuant to the standards for approval of a FLSA collective action settlement under 29 U.S.C. § 216.

2. The Court has reviewed and approves the material terms of the Settlement Agreement, which are summarized below:

/ / /

a.　　　Defendant West Business Solutions, LLC n/k/a Alorica Business Solutions,
Inc. ("Alorica" or "Defendant"), will pay $700,000 (the "Settlement Fund").
The Settlement Fund will be distributed as follows:

　　　　　　　i.　　　$397,320.15 to the opt-in plaintiffs ("Plaintiffs"). This figure was
arrived at after a detailed analysis of Alorica's time and pay records
and represents a payment to each opt-in plaintiff of 3.5 minutes per
shift worked (after the Plaintiffs' initial training period) based on the
Plaintiffs' actual time and pay records (which amount has been
liquidated to account for the opt-in plaintiff's viable FLSA and state
law claims), during the time period of December 21, 2013, through
August 7, 2015.[1] Additionally, $18,120 of the $397,320.15 will be
used to compensate Plaintiffs who would only have estimated
damages between December 21, 2012, and December 21, 2013 (to
account for FLSA "third year" damages), $22,170 will be used to
compensate Plaintiffs whose time/pay records do not identify any
viable monetary claim (each such Plaintiff will receive $10).[2]

---

[1] To compute the individual payments, the Parties relied on the actual timeclock and pay data for each opt-in. For each week after the Plaintiff's first three weeks of employment (to account for initial job training time), three and a half (3.5) minutes were added to every day worked by a Plaintiff to account for the start-up and shut-down time that was allegedly unpaid. The individual payments include 100% of any resulting overtime wages, plus doubling to account for liquidated damages under the FLSA. This 3.5-minute addition is higher than the average start-up and shut-down time estimated by Alorica. Moreover, the additional time is added to every shift worked by the Plaintiffs, even though Alorica contends the Plaintiffs did not work off the clock at all, much less every shift.

[2] The Parties further agreed to exclude from the damages calculation any Plaintiffs who do not meet the class definition or who would not have been affected by the alleged misconduct. This includes Plaintiffs who fall into one or more of the following categories: (1) Plaintiffs who worked on line groups with computer programs that had extremely fast start-up and shut-down times due to using only one computer application as opposed to multiple programs; (2) Plaintiffs who worked on line groups that used a different timekeeping system; or (3) Plaintiffs who would not be entitled to any payment using the formula above for either a two- or three-year window (such as opt-ins who never showed up to work and have no timeclock records). The Parties also agreed to exclude all time worked

|  |  | Finally, Plaintiffs who have a claim to monetary damages will receive a minimum payment of $20.³ Any surplus funds for Plaintiffs payments that fall below $397,320.15 will distributed among the Plaintiffs as follows: If the Class Payment exceeds the total of the individual payments due to the opt-in plaintiffs under Paragraph 3 of the Settlement Agreement, the difference (the "Surplus Funds") shall be distributed on a pro-rata basis among the Plaintiffs who are entitled to payments greater than $20 under Paragraph 3 of the Settlement Agreement. For Plaintiffs entitled to a share of the Surplus Funds, the Surplus Funds shall be added to the amount due under Paragraph 3 of the Settlement Agreement and shall be paid in the same check, and in the same manner, as the payments under Paragraph 3 of the Settlement Agreement. |
|---|---|---|
|  | ii. | A maximum amount of $28,579.85 will be paid to Rust Consulting for settlement administration expenses. |
|  | iii. | A maximum amount of $7,500 will be paid to Named Plaintiff, Tiffanie Padan, as an incentive award. |
|  | iv. | A maximum amount of $35,000 will be paid to Plaintiffs' counsel for litigation expenses incurred in connection with this litigation. |
|  | v. | $231,600 will be paid to Plaintiffs' counsel for attorneys' fees. |

---

after August 7, 2015, which is when the relevant line groups switched to a new timekeeping system. The new system automatically added extra minutes to each CSR's shift, thereby mitigating or eliminating any potential damages. To resolve the claims of Plaintiffs who would otherwise receive no payment, the Settlement Agreement provides for a flat payment of $10 to those Plaintiffs. Two Plaintiffs who signed full releases of Defendant to resolve unrelated litigation are excluded from payment entirely.

³ Settlement payments to Plaintiffs in the amount of $10 and $20 will be paid without any withholding of employment taxes (with the applicable Plaintiffs to receive 1099 forms if required by law). For all other settlement payments to Plaintiffs, 50% of each payment will be subject to withholding taxes (and reported on a W-2 form) and 50% of each payment will be paid without any withholding of employment taxes (and reported on a 1099 form if required by law).

|   |   |   |   |
|---|---|---|---|
| | | vi. | Should the Court disallow some portion of any of the above amounts (the amounts related to settlement administration expenses, Named Plaintiff incentive award, litigation expenses, and attorneys' fees), the amount that is disallowed shall be added to the $397,320.15 amount payable to the opt-in plaintiffs and distributed to the opt-in plaintiffs on a pro-rata basis. |
| | | vii. | Should the actual settlement administration expenses total an amount less than $28,579.85, the surplus amount shall be added to the attorneys' fees amount paid to Plaintiffs' counsel. |
| | b. | | The Plaintiffs shall not be required to submit any claim form or take part in any claims process. |
| | c. | | Settlement payments shall be made to the Plaintiffs within 35 days of this Court's approval of the Settlement Agreement. |
| | d. | | Other than settlement checks that remain uncashed for more than 60 days or that are undeliverable after two attempts by the settlement administrator, there shall be no reversion of any proceeds to Alorica. |
| | e. | | The Plaintiffs will be deemed to have fully, finally and forever released, relinquished, and discharged Alorica and related entities and persons: |

"[F]rom all manner of claims, actions, causes of action, sums of money, covenants, contracts, controversies, agreements, promises, damages (including but not limited to attorneys' fees), and demands that were or could have been asserted in the Lawsuit related to or arising out of any and all claims for unpaid wages, including any claim arising under the Fair Labor Standards Act ("FLSA"), state and local wage and hour laws, whether in law or equity, which he/she ever had, may have had, now has, or which his/her heirs, executors, or administrators hereinafter can, shall, or may have, as a result of any act or omission by the Releasees from the beginning of time through the effective date of this Agreement, whether known or unknown, asserted or unasserted, suspected or unsuspected (collectively, the "Released Claims"). The Plaintiffs further covenant not to sue or otherwise initiate litigation based on any of the Released Claims."

3. The Court finds that the Settlement Agreement constitutes a fair result given the totality of the circumstances facing Plaintiffs and the Class. The benefits of settlement are great in collective actions and other complex cases where substantial resources can be conserved by

avoiding the time, cost, and rigors of prolonged litigation.

4. The settlement was reached after prolonged arms-length negotiations by experienced counsel on both sides. The terms of the settlement as outlined above, including the Parties' plan of allocation, and as set forth in greater detail in the Settlement Agreement, should be approved and followed and, in this Court's opinion, constitute an excellent result achieved by experienced counsel for Plaintiffs and Defendant.

5. The Court finds that Plaintiffs' Counsel has fairly and adequately represented the Plaintiffs and that the requested attorneys' fees in the amount of $231,600 are fair and reasonable based on the work conducted by Plaintiffs' Counsel and should be awarded in full to Plaintiffs' Counsel.

6. The Court finds that the litigation expenses incurred by Plaintiffs' Counsel were necessarily incurred and should be reimbursed to Plaintiffs' Counsel in an amount not to exceed $35,000.

7. The Court finds that Rust Consulting is an appropriate choice to serve as settlement administrator and that Rust Consulting should receive compensation for its services in an amount not to exceed $28,579.85.

8. The Court finds that Named Plaintiff, Tiffanie Padan, fully performed her obligations as representative of the Collective and should be awarded an incentive award of $7,500.

**IT IS HEREBY RECOMMENDED** that the Plaintiffs' Unopposed Motion for Approval of Proposed Settlement, Incentive Award, Attorneys' Fees and Litigation Expenses, and Settlement Administration Expenses (ECF No. 137) be **GRANTED** as follows:

1. The Parties' Settlement Agreement is approved in full and the Parties shall allocate class payments to the Plaintiffs pursuant to the terms and conditions contained in the Settlement Agreement as supplemented by the Parties' Joint Status Report Regarding Proposed Settlement Agreement (ECF No. 138).

2. The Court approves an award in the amount of $231,600 in attorneys' fees and in an amount not to exceed $35,000 for litigation expenses to Plaintiffs' Counsel. Additionally, the

Court finds that it is appropriate, and approves, increasing Plaintiffs' Counsel's attorneys' fee award by what amount, if any, the settlement administrator's expenses are less than $28,579.85.

    3.     The Court approves payment of an incentive award to Named Plaintiff, Tiffanie Padan, in the amount of $7,500.

    4.     The Court appoints Rust Consulting to serve as settlement administrator pursuant to the terms and conditions of the Settlement Agreement and approves payment to Rust Consulting in an amount not to exceed $28,579.85. Additionally, the Court approves the creation of a Qualified Settlement Fund for the administration of the Settlement Fund.

    5.     Upon entry of the Court's order approving settlement, Plaintiffs' claims will be released as set forth in the Settlement Agreement, the Parties will submit an agreed order dismissing this case with prejudice, and the Court will retain jurisdiction as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement.

## **NOTICE**

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: November 16, 2017

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**